UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INFUCARE RX, INC., INFUCARE RX, LLC, DM CLINICAL COLLABORATIONS, HOMECARE RX, INC., FACTOR ONE SOURCE PHARMACY, LLC, and FAST ACCESS SPECIALTY THERAPEUTICS, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>EXPRESS SCRIPTS, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 4:24 CV 1054 JMB<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Remand Case to State Court (Doc. 13). For the reasons set forth below, the Motion to Remand is **GRANTED**.

### Background

Plaintiffs InfuCare Rx, Inc., InfuCare Rx, LLC, DM Clinical Collaborations, Homecare Rx, Inc., Factor One Source Pharmacy, LLC, and Fast Access Specialty Therapeutics, LLC, filed suit on June 20, 2024, in the Circuit Court for the County of St. Louis, Missouri (Doc. 1-2). According to the Complaint, Plaintiffs are pharmaceutical corporations that specialize in providing medications, infusions, and other medical services to individuals with blood or immune disorders. Defendant is a pharmacy benefit manager that maintains a network of pharmacies from which various plan sponsors (i.e. employers) direct their members to purchase pharmaceuticals. Plaintiffs entered into an agreement with Defendant to be a part of its pharmaceutical network. Those agreements from the base of the Complaint. Plaintiffs allege that the contracts are decidedly one-sided: Defendant dictates the terms of the agreements, manages how it is administered, outlines

how claims are processed, and sets the amounts of reimbursement and payments. Defendant can control the terms of the contracts because it is one of three pharmacy managers that control 85% of the market share.

The Complaint also alleges that Defendant provides prescription medication services through Medicare Part D plan sponsors to enrollees; a scheme that is developed and approved by the Centers for Medicare and Medicaid Services, a federal agency. Pursuant to the requirements of the Medicare Act, 42 U.S.C. § 1395, *et seq.*, Defendant is required to provide "negotiated prices" to enrollees that take into account, among other things, "direct and indirect remunerations" (also referred to as DIR fees or "post point-of-sale fees") for covered drugs and dispensing fees. Plaintiffs allege that the manner in which Defendant structures its DIR fees and costs related to Part D plans reduces the amount of reimbursement that Plaintiffs are entitled to pursuant to its contractual agreements. Relatedly, Plaintiffs contend that Defendant misapplies a "Star Rating" system, developed by the federal agency, in assessing fees and costs. Plaintiffs note that pursuant to the 21st Century Cures Act, 42 U.S.C. § 201, *et seq.*, Defendant no longer is entitled to charge them (providers of home infusion services) with direct and indirect remunerations fees or apply the Star Rating system; however, it nonetheless continues to charge those fees through misapplication of the Star Rating system in a manner contrary to industry standards. As a result, Plaintiffs state that they have been damaged in excess of $4.5 million.

Plaintiffs allege breach of contract in Count I. In particular, Plaintiffs assert:

> As the Cures Act does not permit application of performance criteria to home infusion fills, and ESI agrees to apply the CMS Star Rating performance metrics as required by federal law, ESI's assessment of performance criteria to home infusion fills by the InfuCare Pharmacies breaches the parties' written agreements.

(Doc. 1-2, p. 25). In Count II Plaintiffs also allege breach of contract. In particular:

> Even if ESI has the right to apply the Star Ratings metrics to Plaintiffs' fills—which it does not—ESI has failed to appropriately assess Plaintiffs' performance criteria under ESI's DIR program.

(Doc. 1-2, p. 26).  Finally, Plaintiff alleges in Count III a breach of the implied covenant of good faith and fair dealing pursuant to Missouri law (Doc. 1-2, pp. 27-28).

Defendant removed this action on July 30, 2024, pursuant to this Court's federal question jurisdiction, 28 U.S.C. § 1331 (Doc. 1).  Defendant asserts that Count I raises issues of federal law as it relates to the contract between the parties.  Defendant further asserts that this Court may exercise supplemental jurisdiction over the remaining state law claims of breach of contract and implied covenant.  28 U.S.C. § 1367(a).

## Discussion

This Court has an independent obligation to determine whether subject matter jurisdiction exists.  Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010).  If it appears that this Court lacks jurisdiction, this case must be remanded to the state court from which it was removed.  28 U.S.C. § 1447(c); Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1033 (8th Cir. 2014).  All doubts about the propriety of removal are resolved in favor of remand.  Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009).  Defendant, as the proponent of jurisdiction, bears the burden of establishing federal jurisdiction.  Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969).

When removal is based on federal question jurisdiction, a claim must "aris[e] under the Constitution, laws, and treaties of the United States."  28 U.S.C. § 1331.  Whether a claim arises under federal law is determined by the contents of a well pleaded complaint: "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  Wullschleger v. Royal Canin U.S.A., Inc., 953 F.3d 519, 520 (8th Cir. 2020).  Federal

question jurisdiction usually is found when federal law supplies the cause of action. Gunn v. Minton, 568 U.S. 251, 257 (2013). There is no dispute that the Cures Act does not create a federal cause of action as it relates to this case. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 812 (1986). Therefore, because Plaintiff is currently alleging state law claims, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 314 (2005); Moore v. Kansas City Public Schools, 828 F.3d 687, 691-692 (8th Cir. 2016).

Defendant argues that Count I, while not directly asserting a violation of federal law, raises a federal issue that should be entertained in this forum. Defendant notes that Count I explicitly alleges that it has breached the contract between the parties by using Star Rating performance metrics to compensate Plaintiffs in violation of the 21st Century Cures Act. See generally, Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982) ("There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law."). Defendant further argues that the federal issue is actually disputed and substantial in that its determination would have "wide-ranging implications" (Doc. 30, p. 7). See, Pet Quarters, Inc. v. Depository Tr. & Clearing Corp., 559 F.3d 772, 779 (8th Cir. 2009) ("Resolution of this dispute would control the outcome in numerous other cases."). Finally, Defendants argue that the issue would not disrupt the federal-state balance because "[i]t is plainly proper for a federal court to determine the meaning of [ ] federal law" (Doc. 30, p. 8). The Court is not convinced.

Certainly, Count I may involve an interpretation and application of federal law to determine whether the contracts at issue set forth a compensation scheme contrary to the Cures Act and

related regulations.  The issue is actually disputed because, notwithstanding Plaintiffs' arguments that the statutes are clear, there may be some room for interpretation.  However, it does not appear to the Court that the federal question is substantial to the federal system as a whole such that this Court should exercise jurisdiction.  See Gunn, 568 U.S. at 260.  That is, Defendant has not convincingly established that this case fits into "the special and small category" of cases that arise under federal law.  See Empire Healthchoice Assur., Inc., v. McVeigh, 547 U.S. 677, 699 (2006).

     A "substantial question" can be one that "present[s] a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases" as opposed to one that is dependent on facts or that is specific to a situation.  Empire Healthchoice, 547 U.S. at 700 (2006) (quotation marks and citation omitted).  In this case, the complaint alleges that only Defendant enforces its contracts with Plaintiffs, who provide particular types of medical services, in a manner inconsistent with the Cures Act.  As such, the allegations only concern the particular parties in this case.  And, besides making broad statements about the wide sweep of the issues in this case, Defendant has presented no detailed or specific argument that there is either a pure issue of law or that any ruling would affect a broad range of cases.  Defendant has made no showing that a violation of the Cures Act as a tangential element of a state law cause of action would confer jurisdiction.  See Merrell Dow Pharmaceuticals, Inc., 478 U.S. at 814 ("We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction.").  Other types of substantial questions involve areas where the government has a substantial interest, like the Internal Revenue Service's interest in the validity of its notices and sales at issue in Grable, 545 U.S. 308.  There is no such contention here.  Still others involve

the constitutionality of federal statutes as in <u>Smith v. Kansas City Title & Trust Co.</u>, 255 U.S. 180 (1921). None of these concerns are present in this case.

Defendant nonetheless argues that jurisdiction exists because Plaintiffs' claims cannot be adjudicated on state law grounds alone; indeed, it argues that Plaintiffs' claims can only be determined through an interpretation of the Cures Act. That interpretation, however, only has meaning to these particular private parties and not as to the application of the Cures Act to, for example, a broad class of people, to the federal government's ability to enforce the statute, to the statutory scheme which the Cures Act is a member, to the federal government's interpretation of the statute, or to any other case or controversy (which Defendant has not identified). <u>See</u>, e.g., <u>Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for Southern California</u>, 463 U.S. 1 (1983) (concluding that federal jurisdiction was lacking even though an issue in the case concerned the meaning of the federal Employee Retirement Income Security Act). There is no showing that the Cures Act is even concerned with how private parties contract fees and prices of pharmaceuticals amongst themselves. This case is about Plaintiff's unhappiness with a contract and their attempt to show a breach of that contract – decidedly state law issues that belong in state court.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand Case to State Court (Doc. 13) is **GRANTED**. This matter is **REMANDED** to the Circuit Court for the County of St. Louis, Missouri and the Clerk of Court is directed to terminate this matter on this Court's docket.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of October, 2024